UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
MELVIN JENKINS,

        Plaintiff,                               **MEMORANDUM & ORDER**
                                                          12-CV-4165 (RRM) (LB)

   - against -

AUX SERGEANT LOMAX ELDER; AUX
CHARLES RICHARDSON; AUX JAMAL
LADSON; AUX HAROLD TULL;[1] P.O.
VAUGHAN ETTIENNE; AND NEW YORK
CITY,

        Defendants.
------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff *pro se* Melvin Jenkins brings this action pursuant to 42 U.S.C. § 1983 alleging civil rights violations by defendants City of New York, Police Officer Vaughan Ettienne, Auxiliary Sergeants Lomax Elder and Harold Tull, and Auxiliary Officers Jamal Ladson and Charles Richardson. (Compl. (Doc. No. 1).) Before the Court is defendants' motion for summary judgment. For the reasons that follow, defendants' motion for summary judgment is GRANTED.

## BACKGROUND

      The following facts are undisputed, except where noted, and are taken from defendants' Rule 56.1 statement, (Defs.' Rule 56.1 Statement (Doc. No. 46)), the exhibits accompanying their motion, (Exs. to Defs.' Mot. (Doc. Nos. 48, 49)), the facts alleged in Jenkins's complaint

---

[1] Plaintiff misspells Ladson's first name and Tull's last name. The Court has corrected the caption to reflect the correct spellings. The Clerk of the Court is directed to amend the docket accordingly.

(Compl.), and the facts alleged in Jenkins's response to defendants' motion, (Decl. Opp'n Mot. Summ. J. (Doc. No. 44)).[2]

On the morning of December 12, 2010, Jenkins was driving a work van along Stuyvesant Avenue in Brooklyn, New York, when he came upon a New York City Police Department Auxiliary Vehicle parked in front of a church at 277 Stuyvesant Avenue and blocking traffic. (Compl. at 4;[3] Defs.' Rule 56.1 Statement at ¶¶ 5, 8.) Jenkins was returning the van to his employer after having driven it home from a job the previous day. (Jenkins Dep. (Doc. No. 48-4) at 101–02.) It is undisputed that Jenkins was operating the van without a license and at that time on parole. (Defs.' Rule 56.1 Statement at ¶¶ 7, 57.)

After a few minutes, a line of cars formed behind Jenkins; the cars began honking, and then Jenkins honked. (Jenkins Dep. at 112.) Several officers then exited their vehicle and approached Jenkins' van. (Compl. at 4.) Jenkins alleges that an argument between he and Officer Ladson ensued, culminating with Ladson striking Jenkins's side mirror with his baton. (*Id.*; Jenkins Dep. at 117.) It is undisputed that Jenkins then attempted to drive away, going the wrong way down the sidewalk of a one-way street. (Compl. at 4; Jenkins Dep. at 117, 124.)

---

[2] After defendants served Jenkins with their motion for summary judgment and accompanying papers, along with copies of Rule 56(e) of the Federal Rules of Civil Procedure, Local Rule 56.1, and Local Rule 56.2, Jenkins filed and served upon defendants a letter entitled "Declaration in Deniai [sic] of Defendant Motion for Summary Judgment." The Court construes this letter as Jenkins's opposition to defendants' motion for summary judgment. The Court notes that Jenkins did not comply with Local Rule 56.1(b), requiring him to submit his own Rule 56.1 statement responding to that of defendants. Ordinarily, failure to comply with the Local Rules regarding 56.1 statements would result in the material facts of the complying party's statement being deemed admitted for the purposes of the pending summary judgment motion. *See* Local Civil Rule 56.1(c). A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Rateau v. City of New York*, No. 06–CV–4751 (KAM) (CLP), 2009 WL 3148765, at *1 n.1 (E.D.N.Y. Sept. 29, 2009) (exercising discretion in reviewing the admissible record evidence in determining whether proposed undisputed facts were disputed). In light of Jenkins's *pro se* status, the Court treats Jenkins's complaint and response to defendants' motion for summary judgment, both of which bear his signature and state that they are made under penalty of perjury, as declarations under Rule 56(c)(4) of the Federal Rules of Civil Procedure, and recites pertinent facts that from these documents for purposes of this motion.

[3] ECF pagination is used throughout this opinion when referring to Jenkins's complaint.

Eventually, the vehicle became stuck on an iron rail and Jenkins began to flee on foot. (Jenkins Dep. at 125–27, 133–34.)

The parties dispute what happened next. According to Jenkins, he saw Ettienne, whom he viewed as a "real cop," unlike the Auxiliary Officers, and surrendered. (Jenkins Dep. at 135; Criminal Trial Tr. (Doc. No. 48-5) at 477.) Jenkins alleges that Elder then told Ettienne that he saw Jenkins put something in his carrying bag and that the two then threw him to the ground. (Compl. at 5.) Jenkins asserts that he landed painfully on his right shoulder and elbow. (*Id.*) According to Jenkins, Ladson and Richardson then began hitting him, with Richardson putting his knee in Jenkins's back. (*Id.*) Jenkins claims he then felt blows in his "head area" from Ettienne and Ladson. (*Id.*)

In contrast, defendants contend that Elder first caught up to Jenkins as he fled, grabbing him by the collar. (Defs.' Rule 56.1 Statement at ¶ 33.) Ettienne then arrived and attempted to help Elder handcuff Jenkins, and in the process all three fell to the ground, with Jenkins still not in handcuffs. (*Id.* at ¶¶ 38–40.) Defendants claim that once Jenkins was on the ground, Ladson arrived and also assisted in placing Jenkins in handcuffs. (*Id.* at ¶ 39.) According to defendants, Richardson took no part in restraining Jenkins and arrived after Jenkins was already in handcuffs. (*Id.* at ¶ 41.) The officers recovered three .38 caliber cartridges from Jenkins's pocket. (*Id.* at ¶ 47, Exs. to Defs.' Mot. Ex. J at 2.)

Jenkins also claims he suffered pain in his shoulder and elbow and Ettienne refused him medical treatment. (Compl. at 4.) However, Jenkins admits that Ettienne retrieved Advil from Jenkins's bag and allowed him to take it at the scene. (*Id.*) Jenkins says that the Advil caused him stomach pain. (*Id.*)

3

Jenkins was arrested and taken to the 81st precinct, where he was charged with assault, reckless endangerment, reckless driving, driving on sidewalks, resisting arrest, possession of pistol ammunition, and unlicensed operation of a motor vehicle. (Defs.' Rule 56.1 Statement at ¶¶ 48, 56.) Jenkins testified at his deposition that he did not have any bruises on his face, legs, or chest at the time, and his mugshot shows no visible bruising. (*Id.* at ¶¶ 48, 56; Jenkins Dep. at 144; Exs. to Defs.' Mot. Ex. M.) Jenkins was released from police custody on the following day, and did not seek any medical attention, purportedly because he was too tired. (Defs.' Rule 56.1 Statement at ¶¶ 51–54.) Jenkins also did not take any pictures of his alleged injuries. (*Id.* at ¶ 55.) Jenkins was subsequently arrested for violating his parole as a result of the incident, and taken to Riker's Island. (*Id.* at ¶ 59.)

On December 23, 2010, at Riker's Island, Jenkins received a full physical. (*Id.* at ¶ 60.) The examining physician found that Jenkins's head, skin, chest, abdomen, and extremities were "normal." (*Id.* at ¶ 63.) The physician also checked a box indicating that Jenkins had never been physically assaulted, and did not note any redness, bruising, or swelling. (*Id.* at ¶ 65.) On December 29, 2010, Jenkins visited the Riker's Island clinic complaining of elbow pain,[4] knee pain, and nasal dryness. (*Id.* at ¶ 68.) Jenkins did not seek any medical treatment after his release from Riker's Island on April 14, 2011. (*Id.* at ¶ 71.)

On October 24, 2011, a grand jury indicted Jenkins on eighteen counts related to the December 12, 2010, incident. (*Id.* at ¶ 73.) On August 30, 2012, after a trial, a jury convicted Jenkins of reckless driving and reckless endangerment. (*Id.* at ¶ 74.) The court sentenced Jenkins to six months imprisonment for reckless endangerment and a concurrent term of thirty days imprisonment for reckless driving. (*Id.* at ¶ 75.)

---

[4] Defendants' Rule 56.1 statement omits references to elbow pain contained in the treating physician's report. (*See* Exs. to Defs.' Mot. Ex. O (Doc. No. 49-4) at 13 (ECF pagination).)

4

On August 20, 2012, Jenkins filed the instant complaint, using a form for *pro se* plaintiffs. (Compl.) Although Jenkins's complaint does not particularize individual causes of action, it can be construed as asserting (1) false arrest, (*see* Compl. at 6 (suing for "time in jail, going to court")); (2) malicious prosecution, (*id.*); (3) excessive force, (*id.* at 4, 5 (describing force used and injuries sustained during arrest)); and (4) deliberate indifference to medical needs, (*id.* at 4 ("I was refuse [sic] medical treatment")). The only injuries alleged in Jenkins's complaint are "pain in [his] shoulder and elbow," following the arrest and "pain in [his] stomach" after officer Ettienne gave him Advil. (*Id.* at 4.)

Defendants moved for summary judgment, arguing that (1) Jenkins's claims for false arrest and malicious prosecution are barred by virtue of his conviction for crimes upon which his arrest and prosecution were predicated; (2) Jenkins's claim of excessive force fails because he has failed to allege that the officers used more than *de minimis* force; (3) Jenkins's claim for deliberate indifference to medical treatment fails because he did not allege a sufficiently serious injury; (4) the City of New York cannot be held liable because Jenkins does not allege that a specific unconstitutional policy or custom that resulted in his alleged injury; and (5) the officers are entitled to qualified immunity.[5] (Def's Mem. Supp. Summ. J. (Doc. No. 47) at 1–2.)

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material facts exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine

---

[5] Because plaintiff's claims fail, the Court does not address reach the issue of qualified immunity.

issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or reasonable inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004).

Once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with specific facts showing there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks omitted). The non-moving party "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

In this case, the Court is mindful of its obligation to "construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009) (citations omitted). Essentially, the Court holds *pro se* pleadings to a less exacting standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008). Since *pro se* litigants "are entitled to a liberal construction of their pleadings," the Court reads *pro se* pleadings to "raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal citations omitted). However, the Court

6

"need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995).

## DISCUSSION

### I. Claims

#### A. False Arrest and Malicious Prosecution

To the extent that Jenkins's complaint asserts that he was falsely arrested or maliciously prosecuted, the undisputed fact of Jenkins's conviction on the charges underlying his arrest and prosecution entitles defendants to judgment as a matter of law. When an arrest results in conviction, that conviction is an absolute defense to Section 1983 claims asserting that the arrest was made without probable cause. *Cameron v. Fogarty*, 806 F.2d 380, 386–89 (2d Cir. 1986); *Walker v. Youman*, No. 02-CV-5957 (NGG) (LB), 2006 WL 525921, at *4 (E.D.N.Y. Mar. 3, 2006) ("The law is clear: if the plaintiff in a civil rights action alleging false arrest is convicted by trial or through plea of the underlying charge, his Section 1983 action must be dismissed.") Similarly, "[t]o establish a claim for malicious prosecution, the plaintiff must demonstrate that the subject proceeding was terminated in the plaintiff's favor." *Harley v. Suffolk Cnty. Police Dep't*, No. 09-CV-2897 (JFB) (ARL), 2012 WL 642431, at *8 (E.D.N.Y. Feb. 28, 2012) (discussing doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994)). The only exception is where the plaintiff can "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87.

Jenkins's claims relate to his arrest on December 12, 2010. (Compl. at 4.) Pursuant to that arrest, Jenkins was charged with, among other crimes, Reckless Endangerment and Reckless

Driving, for which he was convicted on August 30, 2012. (Criminal Ct. Compl. (Doc. No. 48-7); Kings County Criminal Ct. Certificate Disposition (Doc. No. 48-9).) There being no dispute as to this conviction, or any contention that this conviction has been invalidated, defendants are entitled to judgment as a matter law on Jenkins's claims of false arrest and malicious prosecution.

## B. Excessive Force

Although Jenkins does not expressly allege that the officers who arrested him used excessive force, his complaint includes descriptions of force used in the arrest and injuries he allegedly sustained. Jenkins claims that "Ladson started to swing his baton, just missing my head," and that Ettienne "put handcuff[s] on me," and, along with Elder, "threw me to the ground landing on my right shoulder and elbow." (Compl. at 4–5.) Jenkins states that Ladson and Richardson then, "started hitting [me]" and "put his knee in my back," and that "between . . . Ladson and Elder I felt blows to my head area." (*Id.* at 5.) As a result, Jenkins felt pain in his right shoulder and elbow, and upon taking Advil for the pain, additional pain in his stomach. (*Id.*) Jenkins also seeks relief for, *inter alia*, "pain and suffering [and] physical and mental abuse." (*Id.* at 6.)

"Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Courts evaluating such claims must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

8

or attempting to evade arrest by flight." *Phelan v. Sullivan*, 541 F. App'x 21, 24 (2d Cir. 2013) (quoting *Graham*, 490 U.S. at 396). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). While the extent of a plaintiff's injuries is a factor in evaluating the force applied, a "plaintiff may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987).

However, plaintiff still must exhibit some demonstrable physical injury as a result of the defendant's actions. *Phelps v. Szubinski*, 577 F. Supp. 2d 650, 663 (E.D.N.Y. 2008). Where an arrestee suffers only *de minimis* injuries, summary judgment is appropriate. *Smith v. City of New York*, No. 04-CV-3286 (TPG), 2010 WL 3397683, at *10 (S.D.N.Y. Aug. 27, 2010), *aff'd sub nom. Smith v. Tobon*, 529 F. App'x 36 (2d Cir. 2013). "[A]n injury is *de minimis* when it is temporary and/or minor in severity." *Id.* Summary judgment is also warranted where the connection between the injury alleged and the force applied is based only upon speculation or conclusory allegations. *Phelps*, 577 F. Supp. 2d at 663.

Here, there is no dispute that a uniformed Elder first approached Jenkins, nor that Jenkins attempted to flee the scene of their encounter by driving the wrong way down the sidewalk of a one-way street. (*See* Compl. at 4; Jenkins Dep. at 117, 124.) Jenkins admits that after the vehicle he was driving became stuck on a rail, he exited the vehicle and ran. (Criminal Trial Tr. at 475–76.) By Jenkins's own admission he attempted to evade police, first by driving the wrong way along the sidewalk of a one way street, and then on foot. No reasonable finder of fact could conclude that, based on the totality of these circumstances, in particular the danger of his actions

9

and his attempts at evasion, that some force was not justified in taking Jenkins into custody, including tackling him to the ground and holding him there.

Jenkins alleges that Richardson, Ettienne, Ladson, and Elder also struck Jenkins *after* he had ceased resisting and was in handcuffs. (*See* Compl. at 4–5.) Jenkins puts forth no evidence to support his version of events other than the statements in his *pro-se* complaint.[6] However, even accepting that a reasonable jury could credit Jenkins's testimony over that of defendants, Jenkins has not shown that any injuries he sustained were more than *de minimis*.

Jenkins alleges that as a result of the events surrounding his arrest he experienced "pain in [his] right shoulder and elbow."[7] (*Id.* at 4.) However, Jenkins merely asserts vague allegations of "pain" in his complaint, and has not provided the Court with any documentation or other evidence to support his alleged injuries. (*See id.*) In contrast, defendants have proffered evidence showing that Jenkins "did not have any bruises on his face, legs, or chest," did not exhibit any "visible bruising," did not seek medical treatment for his alleged injuries, and did not take any pictures of them. (Defs.' Rule 56.1 Statement at ¶¶ 49–50, 52–55.) In sum, defendants have set forth concrete evidence showing the absence of a disputed issue of material fact and Jenkins has presented no specific evidence showing a genuine dispute. *See Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26, 29 (2d Cir. 2013) (citing *Celotex*, 477 U.S. at 322–24). Summary judgment is therefore appropriate.

---

[6] The court has liberally construed Jenkins's complaint and response to defendants' motion for summary judgment as declarations under Rule 56(c)(4) of the Federal Rules of Civil Procedure. *See supra* note 2.

[7] In their memorandum of law, defendants reference "bumps on the back of [Jenkins's] head," and "blood in his stool," but refer to portions of Jenkins's deposition that neither they, nor Jenkins, has provided to the Court. (*See* Def's Mem. Supp. Summ. J. at 10.) The portions of the deposition transcript that defendants did provide includes Jenkins referring to blood in his stool and defense counsel referring to a "bruise" on Jenkins's head. (*See* Jenkins Dep. at 162.) However, because Jenkins has not alleged these injuries in his complaint, the Court declines to presume he attributes them to defendants.

Moreover, Jenkins has not alleged that Tull used any force against plaintiff, which provides an additional basis under which Tull is entitled to judgment as a matter of law.

### C. Deliberate Indifference to Medical Condition

Jenkins alleges he was "refuse[d] medical treatment" by Ettienne, which the Court construes to assert a claim of deliberate indifference to a medical condition. A plaintiff claiming deliberate indifference to a medical condition must prove "[(1)] that she [or he] had a 'serious medical condition' and [(2)] that it was met with 'deliberate indifference.'" *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)). A serious medical condition is met with deliberate indifference if the defendant has objective knowledge of and disregards "an excessive risk to [the plaintiff's] health or safety," or is "both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . also draw[s] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Caiozzo*, 581 F.3d at 72.

Here, Jenkins has alleged neither that he had a serious medical condition nor that Ettienne disregarded any known risk to Jenkins's health. Jenkins's complaint alleges only that, at the time he was allegedly refused medical treatment, he had, "pain in [his] right shoulder and elbow." (Compl. at 4.) He offers no evidence to suggest that any of his injuries actually warranted medical treatment, and notably failed to take any photographs of his alleged injury, to tell anyone at the police precinct of his injuries, or to say anything specific about his injuries to the emergency medical technicians at central booking. (Jenkins Dep. at 148–49.) Indeed, his complaint indicates that Ettienne gave him Advil at the scene of the arrest, indicating that Ettienne did not disregard Jenkins's assertion that he was in pain, but rather facilitated some relief. Jenkins's claim of deliberate indifference therefore fails as a matter of law. Moreover, his

11

testimony that he did not seek medical treatment or tell others, including medical personnel, of his alleged injuries cuts against the notion that others had objective knowledge of an excessive risk to his health or would have drawn an inference from his alleged injuries that there was "a substantial risk of serious harm" absent treatment.

## II. Municipal Liability

Jenkins also names the City of New York as a defendant. (*See* Compl. at 1.) "Local governing bodies . . . can be sued directly under [Section] 1983 for monetary, declaratory, or injunctive relief where . . . the action [ ] alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). In order for a municipality to be liable in such an action, a plaintiff must prove "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra*, 48 F.3d at 685 (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

However, "a municipality cannot be held liable under [Section] 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Thus, even if proven, an isolated instance of unconstitutional conduct by individual officers is not sufficient to impose municipal liability. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability."); *Sankar v. City of New York*, 867 F. Supp. 2d 297, 308 (E.D.N.Y. 2012) ("[M]unicipal liability cannot be predicated only upon the isolated unconstitutional acts of individual officers."). "Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability . . . ."

*Batista*, 702 F.2d at 397 (citing *Monell*, 436 U.S. at 694 n.58). "Causation for purposes of *Monell* liability is akin to proximate causation in tort law," *Lojan v. Crumbsie*, No. 12-CV-0320 (LAP), 2013 WL 411356, at *3 (S.D.N.Y. Feb. 1, 2013) (citing *Cash v. Cty. of Erie*, 654 F.3d 324, 342 (2d Cir. 2011), *cert. denied*, 132 S.Ct. 1741 (2012)), but will attach only if the "moving force behind [a] violation was an official policy or custom." *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (citing *Monell*, 436 U.S. at 690–94).

Jenkins has not offered evidence of, or even asserted, any official municipal policy or custom sufficient to impose liability on the City. The only reference to the City of New York in his complaint appears in its caption. In the absence of evidence of any such policy or custom, Jenkins's claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Doc. No. 45) is GRANTED. The Clerk of Court is respectfully directed to enter the accompanying Judgment, mail copies of this Memorandum and Order and the accompanying Judgment to *pro se* plaintiff, and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
 September 22, 2015

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge